Melvin R. SHALLENBERGER, d/b/a Century 21 Shallenberger Realtors, Appellant (Plaintiff Below),

v.

SCOGGINS-TOMLINSON, INC., Ronald L. Tomlinson, Leroy Colter, Robert Roler, Carl Ellis, and James Slane, Appellees (Defendants Below).

No. 2-581-A-156.

Court of Appeals of Indiana, Second District.

Sept. 9, 1982.

---

James W. Rozzi, Marion, for appellant.

Thomas J. Simmons, Kokomo, for appellees.

SULLIVAN, Judge.

Melvin R. Shallenberger d/b/a Century 21 Shallenberger Realtors (hereinafter, "Shallenberger") appeals the summary judgment in favor of the Appellees (Defendants below) on his amended complaint for defamation, Paragraph I, and "wrongful civil proceedings", Paragraph II. Shallenberger has raised the following issues for review:

I. Whether he was required to exhaust the remedies provided by the By-Laws of the Kokomo Board of Realtors before commencing litigation; and

II. Whether the Appellees were protected by a qualified privilege and if so, whether they abused the privilege so as to lose the benefit of its protection.

We affirm the summary judgment in favor of Appellees Colter, Roler, Ellis and Slane, and in favor of Appellees Scoggins-Tomlinson, Inc. and Ronald Tomlinson (hereinafter, "Tomlinson") on Paragraph II, and reverse the summary judgment on Paragraph I as to Tomlinson.

I.

All of the parties were members of the Kokomo Board of Realtors (hereinafter, "the Board") at the time of the events which led to the present appeal. On August 23, 1978, Tomlinson filed a written grievance with Kenneth Wooley, Chairman of the Board's Grievance Committee. The essence of Tomlinson's letter to Wooley was that Shallenberger, while representing the sellers of a parcel of real estate, disregarded a statement allegedly signed by potential purchasers represented by Scoggins-Tomlinson, and accepted another offer to purchase. Tomlinson's clients had earlier signed an agreement to purchase the property, contingent upon obtaining the necessary financing, and the statement which Shallenberger allegedly received and disregarded stated that the contingency had been removed, and asked that the abstract be ordered. Tomlinson's letter also accused Shallenberger of back-dating the acceptance of the other purchase agreement.

In his letter to Wooley, Tomlinson contended that Shallenberger had engaged in "gross unethical conduct," violated the Realtors' Code of Ethics and Standards of Practice, and his agency contract with the sellers, and committed fraud by back-dating the acceptance of a purchase agreement. Tomlinson urged the Board to investigate the charges and take immediate disciplinary action against Shallenberger.

Subsequently, Appellees Colter, Roler, Ellis and Slane, constituting the Professional Standards Committee of the Board (hereinafter, "the Committee") held hearings on the grievance and issued a ruling, placing Shallenberger on probation for one year. The Committee set forth its conclusions in a letter to Shallenberger dated November 22, 1978.

On April 9, 1979, Shallenberger filed a Complaint for Defamation and Wrongful Civil Proceedings against the Committee members, Ronald Tomlinson, and Gallery of Homes, Inc. Scoggins-Tomlinson, Inc. replaced Gallery of Homes as a defendant, and after his Amended Complaint was dismissed as to the Committee members, Shallenberger filed a second Amended Complaint on February 26, 1980. In Paragraph I, Shallenberger alleged that Tomlinson had written and caused to be published Exhibit A, the letter to Wooley, which contained the allegedly false and defamatory statements that:

"a. July 20, 1978 we delivered this statement to Shallenberger that *had been signed by the purchasers,*

b. and [Shallenberger] even *committed a fraud by back-dating the acceptance of a purchase agreement.*" (Record at 87–88) (emphasis supplied).[1]

The first paragraph further alleged that the Committee had issued a secondary publication of the matters contained in Tomlinson's grievance by delivering to each director and executive board member of the

Kokomo Board of Realtors a copy of Exhibit B (the Committee's letter to Shallenberger notifying him of its decision) "which reads in pertinent part as follows: '.... That eliminating contingencies in this fashion is acceptable procedure in The Real Estate industry ....'" (Record at 88).

A second paragraph against Tomlinson for "wrongful civil proceedings" alleged that in initiating the grievance, Tomlinson had known that the accusations made against Shallenberger were false and that "said defamatory statements and the grievance leading to the civil proceedings before the Kokomo Board of Realtors, Inc., were wrongful ..." (Record at 89).

In his answer, Tomlinson denied all of the allegations of the complaint, and contended that he was acting under a qualified privilege when he filed the grievance against Shallenberger.

The Committee filed a Motion for Summary Judgment pursuant to Ind. Rules of Procedure, Trial Rule 56, with supporting affidavits by Elizabeth Lumbirt, Executive Officer of the Board, Glenn Shelton, Acting Secretary of the Board, and each Committee member. In her affidavit, Lumbirt stated that she had typed Exhibit B, the Committee's letter to Shallenberger, and was responsible for mailing copies of it to the parties to the grievance, Wooley, and members of the Committee, and that the Committee had never distributed any copies of the original grievance. Shelton's affidavit stated that no appeal of the Committee's decision had been filed with the Board. Affidavits of the Committee members established that neither the grievance nor the notice of the Committee's decision was distributed to any person other than the parties to the proceedings. Counter-affidavits were filed by Shallenberger and his wife, and Appellees' depositions were taken, published, and spread of record.

1. In his deposition, Tomlinson conceded that around August 30, 1972, about a week after he had filed his grievance against Shallenberger, Tomlinson learned that an employee of another real estate agency, not Shallenberger, had filled in the date on the purchase agreement. Tomlinson also testified that toward the end of the final hearing before the Committee, he learned that his clients—the potential purchasers—had not signed the statement that the contingency to the sale had been removed; rather the clients' mother had signed their names.

In its Memorandum in Support of Motion for Summary Judgment, the Committee contended that while it was unclear whether the secondary publication it had allegedly made was of the grievance or of its written decision, under either theory, the Committee had made no publication of a defamatory statement in that (1) Lumbirt's affidavit established that the Committee had made no publication of Tomlinson's grievance, and (2) its written decision was in no way defamatory. Furthermore, the Committee contended, even if it had distributed defamatory matter, it had a qualified privilege to do so. Summary judgment was entered against Shallenberger on both Paragraphs of the Complaint as to all defendants on November 20, 1980.

The standard of review on appeal from a summary judgment is whether the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions, when read in the light most favorable to the non-moving party, reveal any genuine issues of material fact, *Henderlong Lumber Co., Inc. v. Zinn* (4th Dist. 1980) Ind.App., 406 N.E.2d 310, and if not, whether the trial court correctly applied the law. *State ex rel. Van Buskirk v. Wayne Township* (4th Dist. 1981) Ind.App., 418 N.E.2d 234.

■ There is no requirement in T.R. 56 that the trial court specifically state the legal basis for granting summary judgment. *Meier v. Pearlman* (1st Dist. 1980) Ind.App., 401 N.E.2d 31, *cert. denied* 449 U.S. 1128, 101 S.Ct. 948, 67 L.Ed.2d 115; *Ahnert v. Wildman* (2d Dist. 1978) Ind.App., 376 N.E.2d 1182. However, as we noted in *Ahnert,* it would be an aid to appellate review if such procedure were followed, and if review is frustrated by the lack of a statement of reasons because the legal basis for summary judgment is not apparent from the record, we may remand to the trial court for such a statement. 376 N.E.2d at 1189.

While the trial court here did not specifically state the legal bases for granting summary judgment, the following "Findings of Fact" from the Judgment indicate the court's reasoning:

"H. Article VII, Section 4 of the By-Laws of the Kokomo Board of Realtors, Inc. issued November 11, 1977, provides, inter alia, 'In matters involving a charge of unethical conduct, ... (s)uch matters shall be initiated by the filing of written charges ... and shall not subject any person to liability therefore.' [sic]

I. Pursuant to the By-Laws of the Kokomo Board of Realtors, Inc. such written grievances were heard by the Professional Standards Committee, which consisted of defendants Leroy Colter, Robert Roler, Carl Ellis, and James Slane.

J. On November 22, 1978, the Professional Standards Committee issued to plaintiff its findings and conclusions with respect to the complaint made by defendant, Ronald L. Tomlinson.

K. That Section 5 of Article VII of the By-Laws, revised November 11, 1977, provides inter alia, that "The parties to the proceedings shall be given a copy of the opinion and decision."

L. The written findings and conclusions of the Professional Standards Committee of the Kokomo Board of Realtors, Inc. were mailed to plaintiff, Kenneth Wooley, Chairman of the Grievance Committee of the Kokomo Board of Realtors, Inc., Scroggins-Tomlinson, [sic] Inc., Dorothy Edwards Realtors, Inc., Robert Roler, James Slane, Joseph Penceek and Carl Ellis, all of whom were parties to the grievance proceedings and were not mailed to any other person.

M. That such opinion and decision of the Professional Standard Committee was physically mailed to the parties to the proceedings by Elizabeth Lumbirt, Executive Officer of the Kokomo Board of Realtors, Inc., at the direction of defendant, Leroy Colter, acting chairman of the Professional Standards Committee of the Kokomo Board of Realtors, Inc." (Record at 290–91).

These findings indicate that the trial court, in granting summary judgment as to Tomlinson, relied to some degree upon the provision in the Board's By-Laws shielding

from liability those persons who file written charges of unethical conduct, and found summary judgment proper as to the Committee members because the Committee distributed its decision only to persons directly involved in the grievance proceeding.

The Court also stated that the allegations contained in Sub-paragraphs 3 and 4 of the first paragraph of Shallenberger's Complaint presented no issue because he had failed to exhaust his remedies pursuant to the Board's By-Laws. Sub-paragraph 3 alleged that Tomlinson knew his clients had not signed the statement and that others had forged their signatures; Sub-paragraph 4 alleged that the Committee had abundant evidence before it clearly establishing that Tomlinson had made a false statement in his grievance but chose to ignore it in allowing and encouraging the disciplinary proceedings against Shallenberger.

The argument that Shallenberger was required to exhaust his remedies pursuant to the Board's By-Laws is raised by Tomlinson as a defense only to Paragraph II, "Wrongful Civil Proceedings." We find that summary judgment was properly entered on Paragraph II, although our reasoning perhaps differs from that of the trial court.[2]

In his brief, Shallenberger notes that the doctrine of exhaustion of remedies would be applicable were he seeking judicial reversal of the Committee's decision. However, Appellant states, he "does not submit a claim to the courts for reinstatement or for reversal of the actions taken by the Committee", rather he "chose to resort to an action for damages . . . for the alleged tortious acts of libel and wrongful civil proceedings." (Brief for Appellant at 17).

We agree that the doctrine of exhaustion of remedies is inapplicable because Shallenberger is not seeking reversal of the Committee's decision, but find that his claim for damages for "wrongful civil proceedings" is inappropriate under the facts of this case.[3] An action for "wrongful civil proceedings" is an extension of the action of malicious prosecution into the field of the wrongful initiation of *civil suits*. W. Prosser, *Law of Torts* § 120 (4th ed. 1971). The essential elements of an action for malicious prosecution are: the initiation of legal proceedings by, or at the instigation of, the defendant, the absence of probable cause to do so, malice in instituting the proceedings, termination of the proceedings in the plaintiff's favor, and damages sustained by the plaintiff. *Dwyer v. McClean* (1961) 133 Ind. App. 454, 175 N.E.2d 50; *transfer denied* 243 Ind. 108, 183 N.E.2d 204. The action is inappropriate under the facts of this case not only because the grievance proceedings did not terminate in Shallenberger's favor, but also because they were not *judicial* proceedings. *See* 19 I.L.E. Malicious Prosecution § 2 (1959). Therefore, we find that summary judgment was properly entered for Tomlinson as to the claim for "Wrongful Civil Proceedings."

## II.

The basic elements of a defamation action are a defamatory imputation, malice, publication, and damages. *Peterson v. Culver Educational Foundation* (1st Dist. 1980) Ind.App., 402 N.E.2d 448. Genuine issues may also arise with respect to the defenses of absolute or qualified privilege and truth. *Id.* Upon review of a summary judgment, even though there are conflict-

---

2. In *Fort Wayne Patrolman's Benevolent Association, Inc. v. City of Fort Wayne* (4th Dist. 1978) Ind.App., 408 N.E.2d 1295; *reh. denied* Ind.App., 411 N.E.2d 630, Judge Chipman, after discussing the benefit to both the parties and the appellate court of having a statement by the trial court of its reasons for granting summary judgment, stated that while ordinarily the Court of Appeals would confine its review to the reasons given by the trial court, it is not precluded from affirming summary judgment which is in the last analysis correct, although rendered upon a different theory than that upon which it is sustained, particularly where both parties have addressed the theory upon which the judgment is affirmed. 408 N.E.2d at 1301.

3. Appellees submit that "no such distinct cause of action exists." (Brief for Appellees at 6) and we find no Indiana cases so labelled, but perhaps as discussed *infra*, Shallenberger was attempting to bring a form of the action of malicious prosecution.

ing facts and inferences with respect to some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the action. *McKenna v. City of Fort Wayne* (4th Dist. 1981) Ind.App., 429 N.E.2d 662; *Fort Wayne Patrolman's Benevolent Association, supra,* n.2. Here, the contents of the Committee's allegedly defamatory letter, concerning which there is no dispute, are dispositive of Shallenberger's action against the Committee, because the statements lack the requisite actionable character. In his complaint, Shallenberger alleged that Appellant Committee members

"issued a secondary publication[4] of the false misleading, and scandalous matters contained in Defendant Tomlinson's grievance on the 22nd day of November, 1978, a copy of which is attached hereto and marked 'Exhibit B,' by delivering a copy of said letter to each director and executive board member of the Board of Directors of the Kokomo Board of Realtors, which reads in pertinent part as follows:

'... that eliminating contingencies in this fashion is acceptable procedure in the real estate industry....'"

(Record at 88).

Whether a statement is capable of a defamatory meaning is initially a question of law for the trial court. *Cochran v. Indianapolis Newspapers, Inc.* (2d Dist. 1978) Ind.App., 372 N.E.2d 1211. A defamatory statement is one which "tends to injure 'reputation' or to diminish the esteem, respect, goodwill or confidence in the plaintiff or to excite derogatory feelings or opinions about the plaintiff." *Local 15 of the Independent Workers of Noble County, Inc. v. International Brotherhood of Electrical Workers* (N.D. Ind. 1967) 273 F.Supp. 313. It neces-

sarily involves, however, the idea of disgrace. Prosser, *supra,* at 739.

■ We fail to see how the statement regarding a practice of the real estate industry—the elimination of the contingencies to a sale—could be reasonably interpreted to "disgrace" Shallenberger. Accordingly we hold that, as a matter of law, the statement is not defamatory.

The only other allegation which Shallenberger asserts against the Committee is actually an attack on its decision-making process. In his complaint, Shallenberger alleges that the Committee members

"... had abundant evidence before them clearly establishing that Defendant Tomlinson had made a false statement in his grievance but chose to ignore said false statement in allowing and encouraging the disciplining of the Plaintiff as a result of said grievance."

(Record at 88).

Further, in his appeal brief, Shallenberger argues: "Leroy Colter in his deposition states that animosity which existed between Shallenberger and Tomlinson prior to the grievance hearing formed a basis for the one year Shallenberger probation period. Prior animosity should not have been a part of the decision-making process of the Committee." (Appellant's Brief at 18).

■ These attacks on the Committee's decision-making process and the alleged basis for its ruling are not germane. If Shallenberger seeks redress for a ruling he feels was arbitrary and based upon inappropriate factors, he could have appealed the ruling by first exhausting his remedies within the Board's grievance procedure. He chose not to do so.

---

4. A secondary publication occurs when a person receiving a defamatory writing exhibits it to another person or remails it. *Sourbier v. Brown* (1919) 188 Ind. 554, 123 N.E.2d 802. As noted by the Committee in its Memorandum in Support of Motion for Summary Judgment, it is unclear from the Complaint whether the "secondary publication" allegedly made by the Committee was of Tomlinson's grievance or of its own decision. Shallenberger only addresses the latter theory on appeal. Furthermore, any allegation raised concerning a secondary publication of the grievance would fail because Elizabeth Lumbirt's unrefuted affidavit establishes that the Committee members neither distributed copies of the original grievance nor did the Committee or any members distribute a restatement or paraphrase of Tomlinson's allegations. There was no secondary publication.

Because as a matter of law, the Committee's letter was not defamatory, we hold that summary judgment was properly entered as to the Committee members. We next consider the defenses presented by Tomlinson.

Tomlinson claims that he is protected by a qualified privilege, that nothing was done to lose that privilege, and that Article VIII § 4 of the Board's By-Laws, cited by the trial court in its summary judgment "is obviously intended to encourage valid claims of unethical conduct against members of the association so as to protect the public in its dealing with real estate brokers," and that therefore "public policy favors the enforcement of that provision *unless there is a clear abuse.*" (Appellees' Brief at 8) (emphasis supplied).

Although it would be helpful to know whether the trial court based its summary judgment upon a finding of qualified privilege, or because the provision in the By-Laws shielded the participants in grievance proceedings from liability, or upon other grounds, we consider the alternative bases and first address the effect of the By-Laws provision.

Tomlinson concedes that any privilege conferred by the provision is not absolute; rather it is subject to exception for "clear abuse." He cites no authority for the enforcement of such a provision, nor does he indicate what actions would constitute a "clear abuse."

■ Shallenberger argues that the provision confers at most a "qualified privilege," which, even in the absence of such a provision, would apply to communications made without malice during the grievance proceedings if all of the other elements necessary to the defense were present. He cites, by analogy, I.C. 25–1–1–3, noted in *Elliott v. Roach* (4th Dist. 1980) Ind.App., 409 N.E.2d 661, as "an immunity statute pertaining to regulatory bodies of licensed professions in general," which protects persons from civil liability for sworn or written statements made *without malice* to regulatory bodies including the Indiana Real Estate Commission. 409 N.E.2d at 673, n.23.

This statute conferred a qualified privilege, and we conclude that the provision in the Kokomo Board of Realtors' By-Laws likewise affords Tomlinson no more than an affirmative defense which may be rebutted by proof of malice. *Absolute* immunity has been limited to a "very few situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." Prosser, *supra*, at 777. The case law does not support an extension of absolute liability to grievance proceedings within associations such as the Board.

■ The defense of qualified privilege may be asserted as to communications "made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral or social, if made to a person having a corresponding interest or duty." *Elliott v. Roach, supra*, 409 N.E.2d at 672, quoting 18 I. L. E. Libel and Slander § 52 at 475 (1959). Such a privilege extends to statements and communications made in connection with membership qualifications and various activities of lodges, societies, labor unions, professional associations and similar organizations. *Indianapolis Horse Patrol, Inc. v. Ward* (1966) 247 Ind. 519, 217 N.E.2d 626; *Elliott v. Roach, supra*. Members of such organizations may report on the qualifications of applicants, bring charges against fellow members, offer testimony in support of the charges, and make proper publication of any disciplinary action that may be taken, without liability for any resultant defamation, so long as they act without malice. *Indianapolis Horse Patrol, supra*, 247 Ind. at 524, 217 N.E.2d at 629 (citations omitted). In *Elliott v. Roach, supra*, 409 N.E.2d at 673, the Fourth District of this Court recognized that a qualified privilege will generally protect grievances filed with an appropriate regulatory body, there, the Indiana Real Estate Commission. Likewise, a qualified privilege would apply to communications made in the course of grievance proceedings before the Kokomo Board of Realtors, pro-

vided that the other elements of this defense are present.

The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only. The privilege arises from the necessity of full and unrestricted communication regarding matters in which the parties have a common interest or duty. 50 Am.Jur.2d *Libel and Slander* § 195 at 698–699 (1970). The privilege is lost, however, "if the defamation goes beyond the group interest, or if publication is made to persons who have no reason to receive the information." *Weenig v. Wood* (2d Dist. 1976) 169 Ind.App. 413, 435, 349 N.E.2d 235, 248, quoting Prosser, *supra,* at 791.

A qualified privilege does not change the actionable quality of the words published, but merely rebuts the malice implied by law from the making of a defamatory statement, and requires a showing of actual malice. *Weenig v. Wood, supra.* "Malice" may be demonstrated by a defendant's abuse of the privileged occasion in going beyond the scope of the purposes for which the privilege exists. *Puckett v. McKinney* (2d Dist. 1978) Ind.App., 373 N.E.2d 909.

The publication loses its privileged character if it is "motivated by express or actual malice, or if there is such gross disregard of the rights of the person injured as is equivalent to malice in fact. A defendant may believe charges made by him to be true, and yet be actuated by express malice sufficient to destroy a conditional privilege." 50 Am.Jur.2d *Libel and Slander* § 199 at 706. In *Weenig v. Wood, supra,* we noted that not only is the qualified privilege lost if the defendant does not believe what he says, but that recklessness is similarly inexcusable because "no reasons of policy can be found for conferring immunity upon the foolish and reckless defamer who blasts an innocent reputation without making any attempt to verify his state-

ments." 169 Ind.App. at 438, 349 N.E.2d at 250 (citations omitted).

The question whether a communication is privileged is one to be determined by the court as a matter of law, unless the facts are in dispute. Prosser, *supra,* at 796. Whether a defendant has acted in good faith is a question of fact for the jury, *Elliott v. Roach, supra,* 409 N.E.2d at 673; as is the question of whether the privilege was abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of the statement. *Elliott v. Roach, supra,* citing Prosser, *supra,* at 792–796. The issue of abuse of privilege should be submitted to the jury if there is sufficient evidence to raise the issue, and if different inferences and conclusions reasonably may be drawn from the evidence. 50 Am.Jur.2d *Libel and Slander* § 288 at 806.

In the present case, there was evidence which would support an inference that Tomlinson acted recklessly and in bad faith in making the statements in his letter that Shallenberger had back-dated a purchase agreement and ignored a letter signed by potential purchasers removing contingencies and asking that the abstract be ordered. In his deposition, Tomlinson stated that he had never even seen the allegedly back-dated purchase agreement. From this evidence, a trier of fact could have reasonably concluded that Tomlinson acted recklessly in making that charge.

Furthermore, there was evidence from which a trier of fact could have found that Tomlinson had acted in bad faith: Appellee Colter's testimony concerning prior animosity between Tomlinson and Shallenberger, and Tomlinson's testimony that although a week after he filed his grievance against Shallenberger he learned that Shallenberger had not back-dated the agreement, he did nothing to inform the Committee, which did not render its decision until November 22, 1978. Subsequent acts or declarations are admissible to show state of mind at the time of an allegedly defamatory statement. *Glaser v. U.S.* (7th Cir. 1923) 289 F.Supp. 255, *cert. denied,* 263 U.S. 700,

44 S.Ct. 6, 68 L.Ed. 513; 53 C.J.S. *Libel and Slander* § 213(e) (1948). *See Barker v. Prizer* (1897) 150 Ind. 4, 48 N.E. 4.

■ When a motion for summary judgment is sustained, the non-prevailing party is prevented from having his day in court; therefore, the trial court's determination must be carefully scrutinized on appeal. *Middlekamp v. Hanewich* (3d Dist. 1977) 173 Ind.App. 571, 364 N.E.2d 1024, 1030, n. 2. We cannot say that Tomlinson's statements were protected as a matter of law, because there was evidence from which a fact-finder may have found that Tomlinson acted at least recklessly, and in bad faith. The relative unlikelihood of ultimate recovery is not a valid basis for summary disposition. *Musgrave v. Madonna* (2d Dist. 1976) 168 Ind. App. 145, 341 N.E.2d 789. Therefore, we hold that the trial court erred in granting summary judgment for Tomlinson on Paragraph I.

Judgment reversed in part and affirmed in part, and the cause is remanded for further proceedings.

BUCHANAN, C. J., and SHIELDS, J., concur.