Stanley K. PIERCE and Garneda Pierce, Appellants–Plaintiffs,

v.

BANK ONE–FRANKLIN, NA, and David Bauer, Appellees–Defendants.

No. 73A04–6208–CV–283.

Court of Appeals of Indiana, Fourth District.

July 28, 1993.

Transfer Denied Oct. 12, 1993.

Craig D. Doyle, Klineman Rose Wolf & Wallack, Indianapolis, J. Bradley Schooley, Shelbyville, for appellants-plaintiffs.

Raymond L. Faust, Bruce L. Kamplain, Mary Jo Hunter Wedding, Norris Choplin & Schroeder, Carmel M. Alderson, Indianapolis, J. Lee McNeely, McNeely Sanders

Stephenson & Thopy, Shelbyville, for appellees-defendants.

CHEZEM, Judge.

*Case Summary*

Plaintiffs–Appellants, Stanley K. Pierce and Garneda Pierce (Pierces), appeal the trial court's grant of summary judgment in favor of Defendants–Appellees, Bank One–Franklin, NA (Bank) and David Bauer (Bauer). We affirm.

*Issues*

The Pierces raise several issues which we consolidate and restate as follows:

I. Whether a qualified privilege was properly assigned to the statements alleged to have been made by the Bank and Bauer.

II. Whether the trial court erroneously based its decision on an affidavit alleged to be a deposition.

*Facts and Procedural History*

In 1984, the Pierces applied for financing with the Farmers Home Administration (FmHA). Brenda Epple[1] was the acting County Supervisor for Johnson County. Epple contacted the Bank via Bauer, the loan officer in charge of the Pierces' loan account, to determine whether the Bank had an interest in participating with FmHA in the new loan to the Pierces. Following a meeting in April of 1984 with Bauer, Epple made the following notation in her file:

4/2/84. FU w/ Dave Bauer. Explained that repayment was lacking & security was inadequate. He understood this. Said that Pierce had gotten drive-in teller to release 20,000 check, which should have gone to bank. It went to C.P.S. Bank said they were looking at foreclosure. Bauer said that Pierce had coerced teller into releasing check. Bank had lien on the grain. BE

The Pierces' loan application was denied, and they asked for their U.S. Senator to investigate. In letters from Epple to the

1. Subsequent to the events which gave rise to this action, Brenda Epple married and changed her name to Brenda Sermersheim. Thus, subsequent affidavits and statements obtained from her used the name Sermersheim. However, we will use Epple to avoid confusion.

FmHA state director and from the state director to the Senator's office, the word coerced was replaced with the word converted with regard to the $20,000 transaction between the Bank and the Pierces.

On January 23, 1986, the Pierces filed this defamation lawsuit. On May 6, 1991, the Bank and Bauer filed their second motion for summary judgment claiming qualified privilege. Subsequent to the Pierces filing their response, the trial court entered a partial summary judgment as to all portions of the Pierces' complaint going to the communications between the two financial institutions. The trial court allowed the Pierces additional time to file documents substantiating their claim of slanderous comments from the Bank to the community. After some additional affidavits were submitted by the Pierces, the trial court found no genuine issue of material fact requiring a trial and entered summary judgment against them on April 23, 1992.

### Discussion and Decision

Due to the 1991 amendments to Ind.Trial Rule 56, our standard of review has changed for reviewing summary judgments filed after 1990. We recently stated our current standard of review:

Summary judgment proceedings are primarily designed to provide a speedy determination of whether a genuine issue of fact is present and must be tried. It is not itself a trial, but is for the determination of whether there is a genuine issue for trial. In summary judgment proceedings, the burden of production is on the moving party to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. The nonmoving party may rest upon his pleadings until the moving party establishes that no genuine factual issue exists. At this point, the burden of production shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact. The nonmovant may not rest upon bare allegations made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing there is a genuine issue in dispute. If the nonmoving party fails to meet this burden, then summary judgment in favor of the movant is appropriate.

In reviewing a motion for summary judgment, we apply the same standard as the trial court.... We accept as true facts alleged by the nonmoving party. Facts and inferences must be liberally construed in favor of the nonmovant and all doubts must be resolved in the nonmovant's favor. As noted by this court, due to the 1991 amendments to Ind.Trial Rule 56, we as a reviewing court are no longer free to search the entire record to support the judgment of the trial court. It is only those portions of the record that were specifically designated to the trial court that comprise the record for review. However, the 1991 amendments do not alter the structural burdens on the parties. Their sole purpose is to substantially limit the scope of materials in the record the trial court may examine when determining the propriety of summary judgment and, correspondingly, what parts of the record we may properly consider on review. [Citations omitted.]

*Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378, 1381.

Here, and in another case handed down today, (*Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588), we find it necessary to further elaborate on the requirements of the 1991 amendments to T.R. 56. As stated in *Inland Steel*, one purpose of the 1991 amendment to T.R. 56 was to substantially limit the scope of materials in the record for the trial, and subsequently the appellate, court to review when determining the propriety of a summary judgment motion. However, little definition has been given to what constitutes a proper designation in a summary judgment motion.

Without citing the numerous cases which have dealt with summary judgment issues since the 1991 amendment, we note that this court has held that a party properly

designated or did not properly designate the evidentiary matters which constitute a material issue of fact. Without detailed explanation, this court did however hold in *Czaja v. City of Butler* (1992), Ind.App., 604 N.E.2d 9 that a party could meet the designation requirements of T.R. 56 through their oral presentation at the hearing on the motion. There, the court suggested the better practice was for the opponent of a motion for summary judgment to respond in writing and therein to specifically designate the factual issues deemed to preclude summary judgment. *Id.* The court felt the intent of the rule was better served if the designation contained specific references to the evidence of the material issues identified in the response and its specific location in the record. *Id.*

█ A review of the rationale behind the amendments to the summary judgment rule leads us to conclude that summary judgment motions and the nonmovant's responses should more fully and clearly meet the requirements intended by the 1991 amendments.

T.R. 56(C) states in pertinent part:

*At the time of filing* the motion or response, a party shall *designate* to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. (Emphasis added.)

If the object of the amendments was to limit the scope of materials that the trial court was previously obligated to sift through to locate a genuine issue of material fact, then, simply designating to the court everything in the record for the purposes of summary judgment would seem to defeat that purpose. That is particularly evident when one is faced with a record of over 2500 pages as in *Keating.* Similar to this court's recommendations in *Czaja*, our supreme court has set out the better practice for the parties. *Rosi v. Business Fur-*

*niture Corporation* (1993), Ind., 615 N.E.2d 431. Today, we augment the *Rosi* decision by also suggesting the better practice is to clearly and succinctly state the factual issues and the pertinent parts of the record which are directly relevant to those issues in their *motions* or *responses*, not necessarily in the supporting *briefs.* While T.R. 56 does not set out a specific form and while a brief or memorandum may be submitted in support of the motion, succinctly listing every issue of material fact and supporting each listing with a precise reference to the relevant section of the record would greatly assist the trial judge and this court in correctly ruling upon such motions. In short, a party should file a list of the factual matters which are or are not in dispute, a specific designation to their location in the record, and a brief synopsis of why those facts are material. The brief or memorandum in support of or in opposition to the summary judgment motion would then be helpful to further enlighten the court as to the law supporting their position.

Here, the Pierces in their response in opposition to the Bank's motion for summary judgment "incorporate[d] ... the list of evidentiary matters upon which [the Bank] rel[ied] in support of their motion." Three pages into the response, they point to seven issues of fact which they submit precludes any grant of summary judgment. Under two of those issues, they make no reference to any specific part of the record. Nonetheless, absent further clarity in the summary judgment rule and absent notice of our recommendations until today, we accept the "incorporation" as a designation and review only those evidentiary matters specifically designated to the court.

#### I.

The Pierces argue the trial court improperly relied upon the doctrine of qualified privilege and *Chambers v. American Trans Air* (1991), Ind.App., 577 N.E.2d 612 in granting the motion for summary judgment. First, the Pierces claim a question exists as to whether Bauer ever made a defamatory statement. The Pierces also

argue that his statement, if made, was defamatory as a matter of law, and that an affidavit shows the defamatory statement not to be true. Second, without authority, they contend the Bank and Bauer are not entitled to a qualified privilege because of the republication of its defamation, and the Pierces assert no common interest or duty exists. They also argue the privilege does not apply because malice is not an issue. Finally, they claim the Bank and Bauer lose any qualified privilege to which they may be entitled because no good faith belief in the truth of the defamatory statement existed, excessive publication existed, and the statement was made recklessly.

Words falsely written or spoken are considered defamatory if they tend to harm the reputation of another so as to lower him in the estimation of the community or as to deter others from associating or dealing with him. *Near East Side Community Organization v. Hair* (1990), Ind. App., 555 N.E.2d 1324, 1330. Whether a statement is defamatory is a question of law for the court. *Olsson v. Indiana Univ. Bd. of Trustees* (1991), Ind.App., 571 N.E.2d 585. Here, the Bank and Bauer designated to the trial court Bauer's deposition in which he denies the word coercion or converted was used. Further, Bauer states in his deposition that he did not "ascribe" any error to Mr. Pierce when speaking to Epple about the initial grain check transaction with the Bank. The Pierces on the other hand, designate nothing to the trial court which would directly contradict Bauer's deposition. Thus, nothing existed before the trial court which would show that a defamatory statement was made.

Notwithstanding the possible defamatory nature of a communication, the statement may be protected by a qualified privilege if a need exists for full and unrestricted communication on a subject which both parties have a common interest or duty. *Id.* A statement is privileged if it is made in good faith on any matter in which the party making the statement has an interest or a duty, either public or private, whether legal, moral, or social, to a person having a corresponding interest or duty. *Id.* A qualified privilege does not change the actionable quality of the statement, but merely rebuts the malice implied by law. *Shallenberger v. Scoggins–Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699, 707. Its essential elements are good faith, an interest to be upheld, a statement limited in its scope, a proper occasion, and publication in a proper manner to the appropriate parties only. *Id.* The question of whether a statement is privileged is one also to be determined by the court as a matter of law. *Id.* Finally, qualified privilege may be lost if there is a showing of ill will on the part of the communicator, if there is excessive publication, or if the statement is made without belief or grounds for belief in its truth. *Olsson,* 571 N.E.2d at 588.

In the present case, we find Bauer's communication to Epple is entitled to a qualified privilege. It is uncontradicted that Bauer and Epple were discussing the possibilities of financing a loan for the Pierces between the Bank and FmHA. Bauer and Epple had a common interest in the outcome of the loan application and the proper portrayal of the Pierces' financial situation. Similar to *Olsson,* we find that the Pierces' assertions of bad faith, excessive publication, and lack of grounds for belief in the truth are mischaracterizations of the record designated to the trial court in their response to the Bank's and Bauer's motion for summary judgment. In the Pierces' response, the material issues of facts which they list for the court neither mention nor designate anything which would cause the qualified privilege to be lost. Relying only on what the Pierces properly designated to the trial court in their response, we find that summary judgment was proper.

In addition, we note that in their appellate briefs and in their response to the motion for summary judgment, the Pierces refer to a letter from Bauer to the bank's attorney. They submit the letter is relevant to the issue of whether or not the defamatory statements were made by Bauer to Epple. Because we hold Bauer's statements to Epple were entitled to a qual-

ified privilege, we need not address the relevancy of Bauer's letter to the attorney. We also note that the letter was not the Bauer communication of which the Pierces complained originally.

## II.

■ Finally, the Pierces argue the trial court erred by not striking an affidavit by Epple. The affidavit was submitted in support of the Bank's motion for summary judgment and was phrased in a question and answer style. The Pierces claim this is a deposition, and they should have been notified and allowed to be present as provided by Indiana Trial Rule 30. We disagree.

The declaration was not submitted as a deposition nor was it received or used by the trial court as a deposition. It was used as an affidavit; therefore, no notice was required because T.R. 30 was inapplicable. Affirmed.

MILLER, J., concurring.

RUCKER, J., concurring in result.