**Rachel CORTEZ, Appellant–Plaintiff,**

v.

**JO–ANN STORES, INC., et al.,
Appellee–Defendant.**

No. 49A02–0402–CV–138.

Court of Appeals of Indiana.

May 31, 2005.

Steven Sams, Steven Sams, Attorney At Law, Indianapolis, IN, Attorney for Appellant.

Peggy K. Little, Daniel J. Buba, Law Office of Liberty Mutual Group, Carmel, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Rachel Cortez appeals the trial court's grant of summary judgment for Jo–Ann Stores, Inc. ("Jo–Ann"). Cortez raises five issues, which we consolidate and restate as:

1. Whether the trial court erred by concluding Jo–Ann's communications were defamation *per quod*, rather than defamation *per se;*

2. Whether the trial court erred in holding the communications by Jo–Ann were protected by a qualified privilege; and

3. Whether the trial court erred in finding no question of fact about whether Jo–Ann had abused the qualified privilege.

We affirm.

## FACTS AND PROCEDURAL HISTORY

■ At the summary judgment stage, we must resolve questions about conflicting evidence or inferences from the evidence in favor of the non-moving party. Thus, we set out the facts most favorable to Cortez.[1]

Jo–Ann is a retail business selling sewing and craft materials. Jo–Ann has rooms available where independent contractors teach craft classes. While all Jo–Ann employees may schedule classes and review the schedule book, Lynn Meier is the Jo–Ann employee in charge of maintaining the craft class schedule book. Beth Curtin is a Jo–Ann employee who also teaches craft classes at Jo–Ann as an independent contractor.

Jo–Ann has an arrangement with the Girl Scouts of Hoosier Capital Council, Inc. ("Girl Scouts") whereby Girl Scout Troop leaders can schedule craft classes at Jo–Ann for which scouts can earn badges.[2] Twice a year, the Girl Scouts give Jo–Ann the right to publish a book, "The Happenings," which explains the badge earning programs Jo–Ann offers for the Girl Scouts. (Appellee's App. at 25.) The book is made available at the store for troop leaders. Meier is responsible for coordinating this arrangement with Girl Scouts, and her Girl Scout contact is Kate Nicholson, who is program development director for the Girl Scouts.

In the fall of 2001, Cortez was leader of Girl Scout Troop 1182. She scheduled a craft class at Jo–Ann for her troop on November 16, 2001, from 6:30 p.m. to 8:30 p.m. On that date, Cortez visited Jo–Ann and engaged in a craft class with members of her Troop under the instruction of Curtin.

After class, Curtin left a note for Meier on the Class Sign–Up Sheet that said: "Lynn—Please call me about this woman. She doesn't need to be here ever again. I'm calling the council on her." (*Id.* at 29.) On Monday November 19, 2001, Meier called Curtin to discuss Curtin's note. During that conversation, Meier made the following note on the Class Sign-up Sheet: "11–19–01 per Beth: Parent was drunk + allowed daughter to drink her booze—Instructor insisted other parent take girls home. Lynn." (*Id.*)

That night, Meier sent the following e-mail to Nicholson:

Hi, Kate,

---

1. We set out the facts most favorable to Cortez based on the evidence designated to the trial court by Jo–Ann. Cortez filed an Appellant's Appendix containing affidavits and transcripts of depositions; however, Cortez failed to include in that Appendix her response to Jo–Ann's motion for summary judgment or her designation of evidence. As a result, we do not know what parts, if any, of the evidence she included in her Appendix were designated to the trial court. At the summary judgment stage, we may consider only the evidence specifically designated to the trial court. *See Long v. Barrett*, 818 N.E.2d 18, 22 (Ind.Ct.App.2004) ("We remind Long that it is the evidence specifically designated to the trial court that we consider upon review of an appeal challenging the grant of summary judgment."), *trans. denied.* Accordingly, Cortez has not given us any evidence to consider on appeal. Nevertheless, we address her arguments on the merits as best we can using the evidence designated by Jo–Ann.

2. Jo–Ann receives twenty-five percent of the fees charged for the classes, and the independent contractor receives seventy-five percent of the fees. Jo–Ann also profits when scouts purchase the supplies they need for the class.

Have to report something to you and I don't like doing it. She is Rachel Cortez, leader of Troop 1182. She failed to show for one class scheduled for Oct 26. She never called to cancel. Her one phone number is disconnected. We tried several times to reach her. She then calls on 11–8 stating she never missed one, got very upset with me, said she had talked with someone at the store 3 times and said her class was scheduled for 11–16. Called my instructors. They did not know what she was talking about. The woman lied to us. But we made the effort to schedule the class for her on 11–16.

On 11–16, Beth Curtin was waiting for this troop of 8 girls. One woman shows up with 2 little girls. Rachel Cortez shows up at 8 pm, drunk, with her daughter and another girl—total 4 girls. The woman brought in a glass of liquor and a Gatorade bottle full of it. Beth caught Rachel giving her daughter a drink from the glass. Beth stopped her, smelled it and it was liquor. She then got angry and insisted that the other mother drive all four children home. Rachel became angry, told Beth to mind her own business. Beth's concern was with the welfare of the children and [she] told Rachel she would call the police if she had to.

Needless to say, this woman will not be allowed in the store again with a troop. If she comes in again drunk with her children I will not hesitate to call the police to stop her from driving drunk. This is the decision I have made and I feel that the Girl Scout council needs, no I insist, that something is done about this situation before something tragic happens.

Again, I am sorry for bad news, but Kate, this kind of behavior scares the hell out of me and the other associates that work at the store.

Lynn Meier

(*Id.* at 32.)

On January 4, 2002, Cortez filed a claim against Jo–Ann, Girl Scouts, and Beth Curtin as an individual. In the complaint, Cortez alleged as additional facts:

11. The Girl Scouts, without reasonable grounds for believing the defamatory statements to be true, subsequently published the defamatory allegations by communicating them to others outside council leadership who had no legitimate need to know, including another troop leader and the mother of a girl in [Cortez's] troop.

12. The Girl Scouts indefinitely suspended [Cortez] from further troop leadership activities, reasonably foreseeing that [Cortez] would be compelled to repeat the defamatory statements to other third parties, including mothers of children in [Cortez's] troop.

13. Defendants' defamatory acts have harmed [Cortez's] reputation, have lowered [Cortez] in the eyes of the community, have deterred third persons from associating or dealing with [Cortez], and have injured [Cortez] in her office as Girl Scout troop leader.

14. [Cortez] is now suffering and will continue to suffer irreparable injury from these unlawful and tortious acts.

15. Defendants have acted maliciously or with reckless indifference to [Cortez's] rights under Indiana law.

(*Id.* at 21–22.)

Jo–Ann filed a motion for summary judgment. The court heard oral argument on the motion and then granted summary judgment for Jo–Ann. Its order included the following conclusions of law:

2. In the present case, Lynn Meier is the only Jo–Ann Store employee who allegedly communicated defamatory

statements about Plaintiff Cortez. Ms. Meier advised her supervisors and her Girl Scout contact, Ms. Nicholson, of her own dealings with Plaintiff Cortez and also Ms. Curtin's complaint.

\* \* \* \* \*

6. All of the allegedly defamatory statements made by Lynn Meier fall within the qualified privilege doctrine.

7. There is no evidence that Lynn Meier communicated the e-mail regarding Plaintiff Cortez while motivated by ill will.

8. Lynn Meier did not excessively publish her statements about the plaintiff.

9. Lynn Meier spoke to Ms. Curtin and knew her to be an honest woman of high integrity. Lynn Meier had no reason to disbelief [sic] Ms. Curtin's allegations regarding Plaintiff Cortez.

10. In order to prove a claim of defamation, a plaintiff must prove the defendant published defamatory statements about the plaintiff. Without publication to a third party, there can be no liability for defamation.

11. Plaintiff elected to tell friends, co-workers, family members, her employer, and the parents of the children in her troop about the allegations made and the ongoing investigation.

12. Neither Lynn Meier nor Jo–Ann Stores compelled the plaintiff to communicate defamatory information about herself.

13. Defamatory statements are either per quod or per se. Defamation per quod is actionable only if the plaintiff can plead and prove pecuniary damages, as opposed to strictly emotional and reputational harm. Defamatory statements which impute criminal conduct, a loathsome disease, sexual misconduct, or misconduct in a person's trade, profession, occupation or office are defamatory per se in Indiana. The statements made by Lynn Meier are, at most, defamatory per quod.

14. Plaintiff Cortez alleges damages to her reputation, mental anguish, anxiety, depression, embarrassment and humiliation. She does not allege any pecuniary damages as a result of the alleged defamation by Lynn Meier.

15. Without the ability to plead and prove pecuniary damages, Plaintiff Cortez cannot recover for the alleged damages to her reputation, mental anguish, anxiety, depression, embarrassment and humiliation caused by Lynn Meier's alleged defamation per quod.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Defendant Jo–Ann Stores, Inc.'s Motion for Summary Judgment is hereby granted and Judgment is entered in favor of Defendant Jo–Ann Stores, Inc. There are no genuine issues of material fact and Jo–Ann Stores Inc. is entitled to judgment as a matter of law.

(Appellant's App. at 12–14.)

## DISCUSSION AND DECISION

 "The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking Services., Inc.,* 744 N.E.2d 514, 521 (Ind.Ct. App.2001), *trans. denied* 753 N.E.2d 16 (Ind.2001). A trial court should grant summary judgment if the pleadings and designated evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Any doubts about the existence of material issues of fact must be resolved in favor of the non-moving party, which here is Cortez. *See Gatto v. St.*

*Richard School, Inc.,* 774 N.E.2d 914, 919 (Ind.Ct.App.2002).

The party moving for summary judgment has the initial burden to set forth evidence demonstrating no factual issues exist. *Branham,* 744 N.E.2d at 521. Then, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact exists. *Id.* The nonmoving party may not simply rest on her pleading; rather, she must designate evidence to the trial court. *Id.*

We review the trial court's decision using the same standard applied by the trial court. *Id.* We must resolve any doubt about facts, or the inferences therefrom, in the light most favorable to the nonmoving party. *Id.* In addition, our review is limited to the evidence designated to the trial court. *Gatto,* 774 N.E.2d at 919. The party appealing the summary judgment has the burden of persuading us the grant of summary judgment was erroneous. *Id.* However, we may affirm on any theory supported by the evidence designated to the trial court. *Branham,* 744 N.E.2d at 521.

A defamatory statement is one that "tends to injure reputation or to diminish esteem, respect, goodwill or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Id.* at 522. To demonstrate defamation, a plaintiff must prove the defendant communicated a statement that had defamatory imputation, was made with malice, was published, and caused damages.[3] *Id.* When determining whether a statement was defamatory, we may not consider extrinsic facts or circum-

stances; rather we must simply view the communication in its context and give it its plain and natural meaning. *Id.*

### 1. *Type of Defamation*

Cortez claims the trial court erred when it held the statements by Meier were "at most, defamatory *per quod.*" (Appellant's App. at 14) (italics added). We agree.

A statement is defamation *per se* if it imputes: "1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation; or 4) sexual misconduct." *Branham,* 744 N.E.2d at 522. If words impute one of those conditions, they are considered "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Levee v. Beeching,* 729 N.E.2d 215, 220 (Ind.Ct.App.2000). To be defamation *per se,* the defamatory nature of the comment must appear without reference to extrinsic facts or circumstances. *Id.*

If a defendant committed defamation *per se,* the plaintiff is "entitled to presumed damages 'as the natural and probable consequence' of the *per se* defamation." *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind.Ct.App.1992) (quoting *Elliott v. Roach,* 409 N.E.2d 661, 683 (Ind.Ct.App. 1980)), *reh'g denied, trans. denied.* As such, the jury may award a substantial sum of money to the plaintiff without any proof of actual harm. *Id.* In addition, upon proper proof, the plaintiff is entitled to "special damages," or financial damages arising as a consequence of the defamation. *Id.*

---

**3.** Despite a plaintiff's ability to prove those four elements regarding the communication, a defendant cannot be held liable if the statement made was true. Our constitution provides: "In all prosecutions for libel, the truth of the matters alleged to be libellous, may be given in justification." Ind. Const. Art. 1, § 10. Accordingly, in Indiana, true statements "never give rise to liability for defamation." *Branham,* 744 N.E.2d at 522.

Defamatory statements that do not fit the definition of defamation *per se* are, at most, defamation *per quod*. *Branham*, 744 N.E.2d at 522. When a defendant commits defamation *per quod*, the plaintiff is entitled to reimbursement only for special damages that can be proved. *Rambo*, 587 N.E.2d at 146. If a plaintiff in a defamation *per quod* case cannot demonstrate pecuniary damages, then the plaintiff cannot recover for emotional and physical harm. *Id.* We must determine whether a communication was defamation *per se* or *per quod* "without resort to extrinsic facts or circumstances." *Levee*, 729 N.E.2d at 220.

Jo–Ann claims Meier "was not inferring that Cortez was legally intoxicated on the date in question, or concerned that she was drinking alcohol in a public rather than a private place, or that Cortez's own daughter was in any immediate danger." (Appellee's Br. at 23.) Jo–Ann claims Meier was simply "communicating her concern that Cortez had exhibited inappropriate behavior for a role model and Girl Scout leader." (*Id.*) Given the language in the e-mail, we cannot agree.

> Meier's e-mail to Nicholson provided:
> Rachel Cortez shows up at 8 pm, drunk, with her daughter and another girl—total 4 girls. The woman brought in a glass of liquor and a Gatorade bottle full of it. Beth caught Rachel giving her daughter a drink from the glass. Beth stopped her, smelled it and it was liquor. She then got angry and insisted that the other mother drive all four children home. Rachel became angry, told Beth to mind her own business. Beth's concern was with the welfare of the children and [she] told Rachel she would call the police if she had to.
>
> . . . . If she comes in again drunk with her children I will not hesitate to call the police to stop her from driving drunk.

(Appellee's App. at 32.) Cortez claims those statements implied criminal behavior in the form of neglect of a dependent and public intoxication.

The crime of public intoxication, a Class B misdemeanor, occurs when a person is "in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance." Ind.Code § 7.1–5–1–3. Meier's e-mail indicates Cortez was drinking alcohol and was "drunk" at the store, which is a public place. (Appellee's App. at 32.) The plain and natural meaning of the word "drunk" suggests Cortez was intoxicated in public in violation of that criminal statute.

Ind.Code § 35–46–1–4 defines neglect of a dependent: "A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally: (1) places the dependent in a situation that endangers the dependent's life or health . . . commits neglect of a dependent, a Class D felony." Meier's message indicates Cortez was responsible for two children and Cortez gave at least one girl a drink of her alcoholic beverage.[4] We cannot determine whether

---

4. If Cortez gave her daughter a drink of alcohol, she would also have committed contributing to the delinquency of a minor, as a Class C felony:

(a) A person at least eighteen (18) years of age who knowingly or intentionally encourages, aids, induces, or causes a person less than eighteen (18) years of age to commit an act of delinquency (as defined by IC 31–37–1 or IC 31–37–2) commits contributing to delinquency, a Class A misdemeanor.

(b) However, an offense described in subsection (a) is a Class C felony if:

(1) the:

(A) person is at least twenty-one (21) years of age and knowingly or intentionally furnishes:

that act "endangered" a dependent without additional facts, such as how much alcohol was in the drink and how much the child drank. However, Curtin's insistence the other mother drive the children home appears to indicate Curtin believed Cortez was too intoxicated to drive the children home safely, which would constitute placing a child in a situation that endangered the child.[5]

Without resorting to additional evidence, Meier's e-mail to Nicholson implies Cortez was committing multiple crimes. Because the plain and natural meaning of Meier's e-mail imputed criminal conduct to Cortez, the trial court erred when it found Meier's communication was, at most, defamation *per quod.*[6]

### 2. *Existence of Qualified Privilege*

 The trial court held as a matter of law the statements Meier made to Nicholson were protected by a qualified privilege. Cortez claims this holding was erroneous. We agree with the trial court that Jo–Ann and Girl Scouts had a common interest sufficient to permit communications between them to be privileged.

 A communication is protected by a qualified privilege of common interest if the communication was made "in good faith on any subject matter in which the

---

(i) an alcoholic beverage to a person less than eighteen (18) years of age in violation of IC 7.1–5–7–8 when the person knew or reasonably should have known that the person was less than eighteen (18) years of age....
Ind.Code § 35–46–1–8.

**5.** Moreover, operating a vehicle while intoxicated is a Class C misdemeanor. Ind.Code § 9–30–5–2.

**6.** The trial court also found Cortez did "not allege any pecuniary damages as a result of the alleged defamation." (Appellant's App. at 14.) Cortez notes she suffered pecuniary losses in the form of expenses for counseling

---

party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Gatto,* 774 N.E.2d at 924–25. The privilege exists because of "the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty." *Id.* at 925.

 The existence of a qualified privilege does not change the actionable nature of the words spoken. *Shallenberger v. Scoggins–Tomlinson, Inc.,* 439 N.E.2d 699, 707 (Ind.Ct.App.1982). Rather the privilege "rebuts the element of malice implied by law for the making of a defamatory statement." *Id.* The elements of the defense are: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner to the appropriate parties only. *Id.*

 The defendant has the burden to produce evidence establishing the existence of the privilege. *Coachmen Indus., Inc. v. Dunn,* 719 N.E.2d 1271, 1276 (Ind. Ct.App.1999), *reh'g denied, trans. denied* 735 N.E.2d 235 (Ind.2000). Whether the privilege exists is generally a question of

---

sought because of emotional injuries caused by the defamation. (Appellant's Br. at 26.) Jo–Ann claims because emotional harm is not a "special damage," the cost of counseling cannot constitute "special damages." (Appellee's Br. at 24.) We note we have referred to the cost of sessions with a clinical psychologist as "special damages." *Posey County v. Chamness,* 438 N.E.2d 1041, 1049 (Ind.Ct. App.1982). Nevertheless, because the statements were defamation *per se,* Cortez can recover for emotional harm without first demonstrating special damages. *See Rambo,* 587 N.E.2d at 145.

law,[7] *Shallenberger,* 439 N.E.2d at 707, which we review *de novo. Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). However, if the facts are in dispute, then the question of privilege should be submitted to the jury. *Shallenberger,* 439 N.E.2d at 707.

Cortez claims Jo–Ann has no "common interest" with the Girl Scouts that would allow Meier's communication to be protected by a qualified privilege. We must disagree with Cortez.

We acknowledge the facts herein are not on all fours with the facts in typical cases in which our courts have found a qualified privilege, as Jo–Ann and the Girl Scouts are not part of a single social organization. *See, e.g., Coombs v. Rose,* 8 Blackf. 155, 157 (Ind.1846) (discussing privileged communications between members of a church); *Cadle v. McIntosh,* 51 Ind.App. 365, 99 N.E. 779, 781 (1912) (discussing privileged communications between members of the Knights of Pythias). However, neither has Cortez directed us to a case on all fours in which no qualified privilege was held to exist.

In *Powers v. Gastineau,* 568 N.E.2d 1020 (Ind.Ct.App.1991), *trans. denied,* the Greene County Board of Commissioners was preparing to decide which of two organizations providing services to developmentally disabled persons the Board would fund for the next year. A doctor, whose wife was on the board of one of the organizations seeking funding, sent letters to the Board referring to the director of the other organization as a "1st rate lunatic" and a "real lunatic." *Id.* at 1023. The director sued the doctor, and the "trial court determined as a matter of law that a qualified privilege existed." *Id.* at 1024. While we did not specifically affirm that holding, neither did we reverse it.

Jo–Ann and the Girl Scouts have a mutually beneficial relationship whereby Jo–Ann permits independent contractors to hold classes for Girl Scout Troops, scouts earn badges by completing craft projects at Jo–Ann, scouts spend money at Jo–Ann, and the Girl Scouts give Jo–Ann exclusive permission to publish and sell a book related to the badge-earning craft classes. Girl Scouts and Jo–Ann have a mutual interest in maintaining their arrangement to have Troops come to Jo–Ann to earn badges, and they have a common interest to ensure the safety of the girls who come to Jo–Ann for craft classes with their Troops. Neither party has suggested Meier had a legal duty to report Cortez's alleged behavior to Nicholson, but the facts suggest she had a moral and social duty to send the e-mail. Meier is the Jo–Ann employee in charge of maintaining Jo–Ann's relationship with the Girl Scouts, and Nicholson is not only her Girl Scout contact, but also is the Girl Scouts' program development director.

■ "[V]arious communications are protected as privileged, including those between employers and employees, business partners, members of fraternal organizations, creditors and credit agencies." *Gatto,* 774 N.E.2d at 925. In light of the communication herein involving the safety and security of children, whom we generally view as being unable to protect themselves, we are unwilling to hold as a matter of law Meier and Nicholson had no common interest sufficient to protect communications between them by a qualified privilege. *See id.* ("Parents and schools have a 'corresponding interest' in the free flow

---

7. A question of law is "one that requires neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for its resolution." *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000) (quoting 4A Kenneth M. Stroud, Indiana Practice § 12.3 at 134 (2nd ed.1990)).

of information about administrators and faculty members.").

### 3. *Abuse of Privilege*

■ Cortez also asserts the trial court "went too far and invaded the province of the jury by assessing whether the privilege was abused." (Appellant's Br. at 11.) Given the state of the record before us, we cannot agree.

■ Abuse has occurred if: (1) the communicator was motivated primarily by feelings of ill will; (2) the communication was published excessively; (3) the communication was made "without a belief or grounds for belief in its truth." *Powers,* 568 N.E.2d at 1024. The plaintiff has the burden to establish the protection of the qualified privilege was lost because the defendant abused the privilege. *Coachmen Indus.,* 719 N.E.2d at 1276.

■ A jury should determine as questions of fact whether "a defendant acted in good faith," whether "the privilege was abused by excessive publication," whether the defendant used the occasion "for an improper purpose," or whether the defendant lacked "grounds for belief in the truth of the statement." *Shallenberger,* 439 N.E.2d at 707. If different inferences and conclusions could reasonably be drawn from the evidence, then the question of abuse of privilege must be submitted to the jury. *Id.*

Cortez claims the designated evidence creates genuine issues of material fact regarding: (1) whether Meier's communication was prompted in part by "ill will" Meier harbored toward Cortez because Cortez had missed previously scheduled craft classes at Jo–Ann, (2) whether Meier e-mailed Nicholson because she had a good faith belief in Curtain's version of events, and (3) whether Jo–Ann excessively published the information.

We review the trial court's decision using the same standard applied by the trial court. *Branham,* 744 N.E.2d at 521. The party appealing the summary judgment has the burden of persuading us the grant of summary judgment was erroneous. *Id.* Importantly, our review is limited to the evidence designated to the trial court. *Gatto,* 774 N.E.2d at 919.

Cortez's Appendix contains the Chronological Case Summary, the order granting summary judgment, the transcript of the hearing on Jo–Ann's motion, excerpts of depositions, Cortez's complaint, Meier's affidavit, e-mails between Meier and Nicholson, the class instructor agreement, and the class sign up sheet. Conspicuously missing, however, is a "Designation of Evidence" or a Brief in Opposition to Summary Judgment in which Cortez would have designated specific evidence to the trial court in opposition to summary judgment. Without such a document, we have no way to know what portions, if any, of that evidence Cortez designated to the trial court. *See, e.g., Long,* 818 N.E.2d at 24 n. 13 (noting appellant included items in her appendix that were not designated to the trial court, and holding court did not err in granting summary judgment where designated evidence to trial court failed to create genuine issue of material fact).

Because Cortez's Appendix fails to demonstrate the evidence she designated to the trial court created genuine issues of material fact, we cannot hold the trial court erred when it granted summary judgment to Jo–Ann based on the existence of a qualified privilege that had not been abused.

### CONCLUSION

The trial court erred when it held Meier's statements were "at most" defamation *per quod,* because the communication imputed criminal conduct to Cortez. Howev-

er, the trial court did not err when it held Jo–Ann and Girl Scouts had a common interest that would permit Meier's communication to Nicholson to be protected by a qualified privilege. Cortez has not demonstrated her designated evidence created questions of fact regarding whether Jo–Ann had abused that privilege. Accordingly, we affirm.

Affirmed.

BAILEY, J., and SHARPNACK, J., concur.