Barton TURNER, Appellant–Plaintiff,

v.

BOY SCOUTS OF AMERICA and Sagamore Council, Appellees–Defendants.

No. 09A02–0603–CV–174.

Court of Appeals of Indiana.

Nov. 3, 2006.

Jim Brugh, Logansport, IN, Attorney for Appellant.

Steven J. Strawbridge, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Barton Turner appeals the trial court's grant of summary judgment in favor of the

Boy Scouts of America and Sagamore Council (collectively, "the Boy Scouts"), its denial of Turner's motion for partial summary judgment, and the limitation that it imposed upon Turner's request for discovery. We affirm in part, reverse in part, and remand.

### Issues

We restate Turner's issues as follows:

I. Whether the trial court abused its discretion in determining that third-party non-members' letters to the Boy Scouts about Turner are not discoverable;

II. Whether internal communication between Boy Scouts executives amounts to publication for purposes of Turner's defamation claim; and

III. Whether the qualified privilege of common interest shields the Boy Scouts from liability for intra-organizational communication.

### Facts and Procedural History

According to its website, the Boy Scouts of America, a non-profit organization, is "the nation's foremost youth program of character development and values-based leadership training." *See* Boy Scouts of America, National Council, Vision Statement, http://www.scouting.org/nav/enter.jsp?s=mc&c=mv (last visited Sept. 22, 2005). The Sagamore Council is a local council of the Boy Scouts operating in Kokomo. It oversees the local Boy Scouts organizations in several nearby counties, including Cass County. Turner was a volunteer scoutmaster with Troop 203 in Logansport. On September 30, 1999, Boy Scouts senior district executive Tim Senesac of Logansport received an anonymous phone call The female caller told Senesac that Turner possessed child pornography. Senesac contacted Joseph Vollmer, a Saga-

more Council executive, and told him about the anonymous call. Vollmer instructed Senesac to obtain the woman's name and phone number. The next day, Senesac provided Vollmer with this information. Vollmer contacted the woman, listened to her story, and asked for "collaborating evidence." Appellant's App. at 144. She gave him the names of two people that she claimed would corroborate her story, and he asked her to have those people contact him directly with their complaints. They both called Vollmer the next day and alleged that Turner possessed child pornography.

Without identifying Turner or any of the complainants, Vollmer discussed the situation with his immediate supervisor, area director Richard Shepherd, and the Boy Scouts' legal counsel, Bill Mengis. Shepherd and Mengis concurred with Vollmer's opinion that Turner's registration with the Boy Scouts should be revoked. On October 4, 1999, Vollmer wrote a letter to Turner, informing him that, "[a]fter careful review," the Boy Scouts had revoked his registration. *Id.* at 215. Vollmer's letter did not state the reason for the revocation. When Turner received the letter, he called Vollmer immediately and asked why his registration had been revoked. Vollmer told him that "it was because of child pornography." *Id.* at 190. On October 5, 1999, Vollmer sent a letter to Leroy Jossell, director of registration service at the Boy Scouts' National Council, informing him that Turner had been "accused" of dealing in child pornography and that "I have been told that charges have been filed with the Sheriff Department, but I have no conformation this has been done." *Id.* at 213. Vollmer subsequently received five letters about Turner's alleged possession of child pornography, three from the people with whom he

had spoken and two from others.[1] The callers and the authors of the letters were not members of the Boy Scouts.

On October 27, 1999, Turner filed an appeal with John F. Kemper, assistant regional director of the Boy Scouts, and adamantly denied the allegations against him. Turner's appeal stated in part:

It is extremely difficult to provide you with any meaningful background or evidence to assist you in evaluating the unfair charges levied against me as well as my response to those charges. First, I do not know who has made the allegations currently pending against me, nor have I had the opportunity to face this person and test the truthfulness of their story. Second, I have been informed by word-of-mouth that the charges against me involve allegations of participation in child pornography, which I adamantly deny. I have not seen any evidence which supports such charges and I welcome the opportunity to do so. As you will see, there is a very logical explanation to the charges levied against me.

It is possible that this matter was commenced by my [REDACTED]. Since we broke up she has filed suit against me, has made similar allegations to my employer, various civic organizations in which I am active, and I suspect the Indiana National Guard, in which I am an officer and have Top Secret clearance through the Military Intelligence Branch, in which I am an ILT Company Commander.

Professionally I am a probation officer with the Cass County, Indiana Probation Department and served in that capacity for the past eight years and, I have been Chief Juvenile Probation Officer since April, 1999. My chief duty is the enforcement of terms of probation upon those who have been found guilty of criminal activity. I feel it is safe to say that I will not win any popularity contest among my clients. It is certainly within the realm of possibilities that a disgruntled probationer has made these grave allegations against me.

I will be happy to consent to a Polygraph examination at a certified location of your choosing, upon the condition that the individual or individuals levying these charges against me also consents to a Polygraph examination. Further, I welcome the opportunity to meet with you personally in order to resolve this situation.

*Id.* at 211.

On November 16, 1999, Vollmer contacted Kemper regarding Turner's appeal and said that "he [could not] find any information from the police." *Id.* at 226. Vollmer suspected that the police department was withholding information from him in order to protect Turner, who was a juvenile probation officer and whose father was on the Cass County Police Merit Commission.

On January 24, 2000, Vollmer received a letter from Jossell asking if any legal action had taken place regarding Turner. On that same date, Vollmer reported to Kemper that "the authorities are treading very lightly" because of Turner's law enforcement connections. *Id.* at 207. On January 26, 2000, Kemper wrote to Turner and informed him that his request for review was on hold "until we know the out-

---

1.  One of the letters alleged that Turner, in his capacity as a probation officer, had offered "special treatment" to a minor if she would show him her breasts. Appellant's App. at 85. We note that as of November 18, 1999, the director of the Cass County Family Support Center had determined that the alleged incident was investigated by the Logansport Police Department and that no charges were filed, and "there is no evidence that this incident took place." *Id.*

come of the investigation being conducted in Cass County." *Id.* at 206. On February 28, 2000, Turner's counsel forwarded to Kemper a letter from Cass County Prosecutor Richard A. Maughmer, stating that his office had received complaints against Turner but that all had been investigated and all had been "determined to be without merit to this date." *Id.* at 202–03. Turner's counsel requested the reinstatement of Turner's registration with the Boy Scouts. On April 10, 2000, Vollmer wrote to Kemper. "My personal opinion is that their [sic] is basis to all the complaints against Mr. Turner, however I do not have any real proof to support my feeling." *Id.* at 201.

On May 16, 2000, Kemper reported to Jossell that the regional review committee had voted to reinstate Turner because "[n]o charges were ever filed and Big Brothers Big Sisters reinstated Mr. Turner." [2] *Id.* at 200. On June 15, 2000, Josell sent Kemper a letter directing him not to reinstate Turner. Jossell's letter echoed Vollmer's suspicions that "politics was involved" in the case and cited the Sagamore Council's desire not to reinstate Turner. *Id.* at 199. Shortly thereafter, Jossell sent a letter to Vollmer thanking him for "the detailed information" concerning Turner. *Id.* at 198. On June 21, 2000, Kemper informed Turner by letter that his appeal was denied. Turner then sought review of his case at the national level. On March 9, 2001, Chief Scout Executive Williams informed Turner that the national review committee had denied his appeal.

On October 3, 2001, Turner filed a complaint for defamation against the Boy Scouts, alleging that the Boy Scouts' communications about Turner's alleged involvement with child pornography were "false and defamatory." *Id.* at 18. On January 28, 2003, Special Judge David Cox issued an order on Turner's first motion to compel discovery, finding that the five letters submitted to the Boy Scouts, including the authors' identities, were not discoverable. On January 9, 2004, Turner filed his Second Motion to Compel Discovery before the trial court, then presided over by another special judge, Michael P. Krebes. In considering Turner's second motion, Judge Krebes agreed to revisit the issue of the letters' discoverability. After reviewing all five letters *in camera,* Judge Krebes ruled that they were not subject to discovery. On November 9, 2005, the Boys Scouts filed their motion for summary judgment. On December 5, 2005, Turner filed a response and a motion for partial summary judgment, in which he asked the Court to find that the doctrine of qualified privilege did not apply to the Boy Scouts' communications. On that same day, Turner requested that the trial court modify its discovery order. On February 1, 2006, after hearing oral argument, the trial court entered an order granting summary judgment in favor of the Boy Scouts and against Turner. Turner now appeals.

### Discussion and Decision

■ A trial court shall grant summary judgment if the pleadings and designated evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Our standard of review is well-settled.

---

2. It appears that Big Brothers Big Sisters of Cass County, Inc. ("BBBS") received complaints about Turner similar to those received by the Boy Scouts. On December 9, 1999, the executive director of BBBS informed Turner by letter that the organization was reinstating his contact with his "Little Brother" because "[t]he allegations that were made against you which precipitated the need to sustain the match have not been validated. No charges have been filed against you that we are aware of." Appellant's App. at 250.

We review the trial court's decision using the same standard applied by the trial court. We must resolve any doubt about the facts, or the inferences therefrom, in the light most favorable to the nonmoving party. In addition, our review is limited to the evidence designated to the trial court. The party appealing the summary judgment has the burden of persuading us the grant of summary judgment was erroneous. However, we may affirm on any theory supported by the evidence designated to the trial court.

*Cortez v. Jo–Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind.Ct.App.2005) (citations omitted). The fact that the parties have filed cross-motions for summary judgment does not affect our standard of review. *Parkison v. McCue*, 831 N.E.2d 118, 127 (Ind.Ct.App.2005), *trans. denied*. We consider each motion to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ To establish a claim of defamation, the plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind.Ct.App.1999). The parties' summary judgment dispute centers upon the issue of publication. The Boy Scouts claimed that, even if their internal communications were "published," those comments were protected by the qualified privilege of common interest. In response, Turner argued that the Boy Scouts' communications to him were defamatory and that the qualified privilege did not apply to the communications from the complainants to the Boy Scouts because the parties did not have a common interest. He also took the position that, even if the qualified privilege applied to the Boy Scouts' internal communications, the privilege was lost because Vollmer abused it. The trial court's order

granting summary judgment in favor of the Boy Scouts states in pertinent part as follows:

> In order to maintain a claim for defamation the Plaintiff must show that the defamatory matter was "published," that is, communicated to a third person or persons. *Bals v. Verduzco*, 600 N.E.2d 1353[, 1354 (Ind.1992) ].
>
> Turner alleges that he was defamed by a statement made to him from the Boy Scouts. There is no other evidence that any potentially defamatory statements were made by the Boy Scouts to any third person. Without publication of a defamatory statement, there can be no relief granted.
>
> Issues related to qualified privilege do not apply in this case. A communication is protected by a qualified privilege of common interest if made in good faith on any subject matter in which the party making the alleged defamatory communication has an interest. *Cortez v. Jo–Ann Stores, Inc.*, 827 N.E.2d 1223 (Ind.App.2005). Here the only persons who would have had the opportunity to invoke the qualified privilege to protect themselves from an alleged defamatory statement would have been the anonymous sources. They were the only persons communicating an alleged defamatory statement to a third person.
>
> The Boy Scouts were merely the recipient of alleged defamatory information. Liability can only extend to those publishing defamatory statements not those receiving the statements.
>
> For the foregoing reasons the Court finds that there are no genuine issues as to any material facts and the Boy Scouts are entitled to judgment as a matter of law.

Appellant's App. at 9.

■ We agree with the trial court that, as a matter of law, the Boy Scouts'

statement to Turner regarding allegations that he possessed child pornography was not defamatory because it was not "published" to a third person. We also agree that the Boy Scouts cannot incur liability here for the comments made by non-member complainants. However, we do find merit in Turner's argument that communications that Vollmer made about Turner to other Boy Scouts officials amounted to publication, thus making it necessary to consider whether qualified privilege protects the Boy Scouts from Turner's defamation claim. The trial court left this issue unresolved, however.[3]

### I. Discovery of Complainant Letters

First, we will review the trial court's denial of Turner's discovery motion regarding the five letters received by the Boy Scouts alleging Turner's possession of child pornography. As discussed above, the first two special judges assigned to this case denied Turner's request, and another panel of this Court refused to certify the issue for interlocutory appeal. *See Turner v. Boy Scouts of America*, No. 09A02–0304–CV–338 (Ind.Ct.App. May 23, 2003) (order denying motion for leave to appeal from interlocutory order). The third special judge did not reach the issue, having ruled in favor of the Boy Scouts on their motion for summary judgment, which is the source of this appeal.

We afford great deference to a trial court's discovery decisions. *Andreatta v. Hunley*, 714 N.E.2d 1154, 1159 (Ind. Ct.App.1999), *trans. denied.* "We will interfere with a trial court's ruling on discovery matters only where an abuse of discretion is apparent." *Id.* An abuse of discretion occurs when the trial court's decision is against the logic and circumstances of the case. *Id.*

Generally, a party may obtain discovery regarding any matter relevant to the subject matter of the case, or which appears reasonably calculated to lead to the discovery of admissible evidence. *Stuff v. Simmons*, 838 N.E.2d 1096, 1099 (Ind.Ct.App.2005), *trans. denied; see also* Ind. Trial Rule 26(B)(1). Turner's claim of defamation is based upon his allegations that Vollmer made communications to other Boy Scouts executives without belief or grounds for belief in their truth and/or with ill will. The specific content of any complaints received by the Boy Scouts, as well as the identities of the complainants, are thus relevant to this lawsuit. Judge

---

**3.** The Boy Scouts argue that Turner has waived his argument regarding communications to other Boy Scouts officials as defamation because he "never substantively argued or briefed before the trial court that this intra-organizational communication constituted the publication giving rise to Turner's defamation claim." Appellees' Br. at 17 n. 10. While we agree that Turner's argument before the trial court could have been more artfully framed, he did argue that the Boy Scouts' intra-organizational communications about his alleged possession of child pornography amounted to defamation. *See* Appellant's App. at 99 ("Scout Executive Vollmer defamed Turner by saying that Turner was 'dealing in child pornography' ") (referring to the form that Vollmer submitted to the Boy Scouts national council upon termination of Turner's registra-

tion). Further, Turner claimed, as he does here, that the qualified privilege does not apply to the comments between Boy Scouts executives because they abused the privilege. Before the trial court, it appears that the parties focused primarily upon the issues of whether there was a qualified privilege between the anonymous callers and the Boy Scouts, and whether the Boy Scouts' communications to Turner himself were "published" for purposes of his defamation claim. In light of Turner's confusing presentation of the issues in his brief and at the summary judgment hearing, we can certainly understand the trial court's failure to rule on the issue of intra-organizational communication. We do not think that Turner waived the issue, however, for purposes of this appeal.

Krebes determined that "the authors were not and are not agents and/or employees of the [Boy Scouts]. Therefore, no assertions contained in the disputed letters can be attributed to [the Boy Scouts]." Appellee's App. at 13. While we agree that the Boy Scouts cannot be liable for the non-members' statements, we think that the sources and content of the letters are relevant in determining whether Vollmer had believed or had grounds for believing in the truth of his communications to other Boy Scout executives and whether those communications were motivated by ill will.

We conclude that the trial court's decision was against the logic and natural inferences to be drawn from the facts of the case. In our view, the five letters received by the Boy Scouts contain information that is relevant to Turner's case and/or could be reasonably calculated to lead to the discovery of admissible evidence. Therefore, we reverse the trial court's ruling on this issue and order the Boy Scouts to provide true and accurate copies of these five letters to Turner within thirty days of the date of this opinion.

## II. Intra–Organizational Communication as Publication

■ Turner argues that the statements between and among Boy Scouts executives on the local, regional, and national level were "published." Our supreme court has held that "employee evaluation information communicated intracompany to management personnel may be considered published for purposes of a defamation action." *Bals*, 600 N.E.2d at 1356. Similarly, in *Trail v. Boys & Girls Clubs of N.W. Indiana*, 845 N.E.2d 130, 136 (Ind.2006), we found that transmission of a report that reflected negatively upon the executive director between and among the directors of a nonprofit organization would constitute publi-

cation sufficient to support the publication requirement of a defamation claim. It follows, then—and the Boy Scouts appear to concede—that communications among Boy Scouts executives regarding Turner's alleged possession of child pornography constitutes publication in the context of Turner's defamation claim.

## III. Qualified Privilege

■ The Boy Scouts argue that even if intra-organizational communication of information regarding Turner's fitness as a scoutmaster is considered published, such communication is protected by the qualified privilege of common interest. Qualified privilege applies if a communication is made "in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals*, 600 N.E.2d at 1356. Of course, the Boy Scouts executives have a common interest in protecting the health and welfare of the children served by their organization, as well as in protecting the Boy Scouts from potential liability. These common interests necessitate communication within the organization about the reasons why a person may or may not be suitable to act as a volunteer.

■ As mentioned above, Turner argued that the qualified privilege does not protect the Boy Scouts from liability in the instant case because they abused the privilege. *See Cortez*, 827 N.E.2d at 1234 (plaintiff has burden of establishing that protection of qualified privilege was lost because defendant abused privilege). Abuse of the qualified privilege has occurred if: (1) the communicator was motivated primarily by feelings of ill will; (2) the communication was published excessively; or (3) the communication was made

" 'without a belief or grounds for belief in its truth.' " *Id.* (quoting *Powers v. Gastineau,* 568 N.E.2d 1020, 1024 (Ind.Ct.App. 1991)). Turner argued that Vollmer was motivated primarily by feelings of ill will against Turner and because Vollmer communicated the child pornography allegations without belief or grounds for belief in their truth.

The designated evidence surrounding the intra-organizational communications is as follows. Senesac notified Vollmer of an anonymous phone complaint alleging that Turner possessed child pornography. When Senesac provided Vollmer with the caller's name and phone number, Vollmer contacted the woman, listened to her story, and told her that he needed "collaborating evidence." Appellant's App. at 144. The next day, two more people called Vollmer and claimed that Turner had child pornography in his possession. Based on these three phone calls, Vollmer contacted his regional supervisor and the Boy Scouts' legal counsel and described the situation to them without identifying the accusers or the accused. Vollmer expressed his opinion to each of them that the volunteer's registration should be revoked, and they both agreed. Then, that same day, Vollmer wrote a letter to Turner, advising him that "[a]fter careful review, we have decided that your registration with the Boy Scouts Of America should be revoked." *Id.* at 215. Vollmer also completed an "Ineligible Volunteer Record Sheet" upon which he wrote that Turner was "accused of dealing in Child Pornography[.]" *Id.* at 214. Vollmer sent this form to Jossell of the national Boy Scouts office along with a copy of the letter he had sent to Turner on

October 4, 1999, notifying him that his registration had been terminated.

On or about October 4, 1999, Vollmer talked with a representative of the local police department, an investigator with the Cass County Sheriff's Department, and an investigator with the prosecutor's office. He asked each of these individuals if he or she knew of an investigation related to a Boy Scout leader in Cass County. Each of them told Vollmer that he or she could not comment on an ongoing investigation. Vollmer admits that he never followed up with any law enforcement officials after those initial conversations. He suspected that they were withholding information from him because Turner was a probation officer. On February 18, 2000, Turner's attorney, Jon Myers, forwarded to the Boy Scouts a copy of a letter from Cass County Prosecutor Maughmer stating: "This office has received complaints against Mr. Turner. Some are attributable and some have been anonymous. All have been investigated and determined to be without merit to this date." *Id.* at 202–03.

On April 10, 2000, Vollmer responded to assistant regional director Kemper's request for Vollmer's opinion on reinstating Turner as a scout leader as follows: "My personal opinion is that their [sic] is basis to all of the complaints against Mr. Turner, however I do not have any real proof to support my feeling." *Id.* at 201. In his deposition, Vollmer testified that the basis of his opinion was "[j]ust a gut feeling." *Id.* at 169. He also conceded that he did nothing to confirm the credibility (or lack thereof) of Turner's accusers, one of whom was apparently embroiled in a custody battle with Turner.[4] Clearly, Vollmer's com-

---

4. The record suggests that Turner's ex-girlfriend, Deana Spencer, was one source of the child pornography allegations made to the Boy Scouts. Around the same time, Spencer requested that the Cass Circuit Court restrict Turner's visitation with their son because she claimed that he possessed child pornography. Also, she sent a letter to Prosecutor Maughmer on February 1, 2000, referencing the "child pornography papers" that she had giv-

munications about Turner to regional and national Boy Scouts executives were consistently based on his "gut feeling," which he attributes, at least in part, to the fact that one of the three original complainants, as yet unidentified, was a "public official." *Id.* at 169, 160. As for the other complainants, he noted that he was persuaded by their "adamancy that this [problem] existed." *Id.* at 160.

As discussed above, the five complainants' letters have not yet been made available for discovery, and the content of these letters is crucial to a determination of the basis and motive for Vollmer's communications within the Boy Scouts organization. Without this evidence, we cannot draw any conclusions as a matter of law regarding Turner's claims that the Boy Scouts lost the protection of the qualified privilege because Vollmer abused it by making statements about Turner in the absence of belief or grounds for belief in their truth and/or with ill will. In fact, even after discovery is complete, there might be issues of material fact that prevent summary judgment disposition of that issue.

In sum, we agree with the trial court that the comment to Turner from the Boy Scouts was not defamatory because there was no publication to a third person and that the Boy Scouts were not liable for comments received from non-members. We believe that the trial court erred, however, in failing to consider the Boy Scouts' potential liability for its intra-organizational communications regarding Turner's alleged possession of child pornography. Upon our own review of the evidence before the trial court, we must conclude that the statements made by Vollmer to other Boy Scouts executives were published for purposes of a defamation analysis and that

the doctrine of qualified privilege applies to those intra-organizational statements due to the executives' common interests in protecting their organization and the youth it serves. Because discovery is not yet complete, however, we cannot resolve the question of whether Vollmer abused the privilege.

We therefore affirm the trial court's granting of summary judgment in favor of the Boy Scouts on the following issues: (1) that the Boy Scouts are not liable for any statements made to Turner himself about the child pornography allegations, as these statements were not published to a third party for purposes of a defamation analysis; and (2) that the Boy Scouts are not liable for statements made to them by non-members. In addition, we remand to the trial court for enforcement of our discovery order regarding the five letters discussed above and for further proceedings on whether the Boy Scouts abused and thus lost the qualified privilege of common interest.

Affirmed in part, reversed in part, and remanded.

KIRSCH, C. J., and BAILEY, J., concur.

en to a local city councilman to deliver to the prosecutor and the local sheriff in the fall of 1999.